Good morning. May it please the Court, my name is Eric Biatfit, representing the plaintiff and I'm just advising the Court that I agree with the government's position that this Court does not have jurisdiction over the discretionary decision denying adjustment of status. I really feel the issue in this case falls on whether or not the Form I-512 being revoked. So I'd leave it to you if you have any questions about that. Well, your point, I guess, is that, you know, when it was revoked, it was revoked while he was out of the country. That's right. And he was not given any process, apparently. That's right. Essentially, what happened is when he was in the United States, he asked for permission to leave the country. Yes. He said to the government, I do not have valid documents to get back here. I do not want to abandon my application for adjustment of status. And I realize that if my application is denied, I have the right to go see an immigration judge under 8 U.S.C. 1229A to have my application reviewed and my right to be in the United States reviewed. Right. I understand all that. I don't want to abandon any of that. I would like permission, though, because I need to travel and then come back to the United States without proper travel documents other than the I-512, which solves that problem, and then be admitted or paroled in to finish my application, which is still pending as of today. Right. And then they revoked it while he was out. Right. With no, presumably no warning or anything to him. He had no idea. He didn't know until he got back and was presenting himself. I received a decision, and I was able to e-mail him, I believe, and I think he was aware when he came back that there was going to be a problem at the airport. Well, once that is done, and you say there's no jurisdiction to review that? No. I say there are other things. Yeah. I mean, advanced parole, he has not been paroled. Okay. So under 1252a2b, I don't see where it's specifically mentioned any authorization to issue Form I-512. It's derived from the parole authority, but that's not specified there. So what does the form say? What does the form promote? The form, it varies, but there's a warning that's there. How does it differ from parole? Well, parole, what happens is if somebody comes to the border and there's an on- Instead of turning them away, you can parole them in. Yes. Somebody who comes to the border, as an example, who needs emergency care from a car accident, there's no hospital in Mexico, for example, so they go to they want to come to the United States in Arizona or whatever, so the officer can parole that person in, saying you don't have the proper documents to come in, but there's an emergency, I'm going to parole you to come into the United States to get that urgent care. Right. Now, advanced parole is saying, I'm already telling you I don't have the proper documents. Will you give me permission to come back in without proper documents, instead replacing the I-512 as that document that allows me to come back in? But you see, here's what I'm this is a complex case, but why does the I-512 or the Why is that independent of the adjustment of status petition? So why doesn't, once that's decided and that's over and he doesn't have any pending adjustment of status petition, it's been denied, how does he still have anything left to dispute? Why is there still anything left? Okay. I'm trying to understand your question. You're saying if the I-45 is denied, what does he have left? Is that what you mean, or? Well, let's put it another way. Let's assume that he decided he didn't want to go out, leave the country. Went to Egypt, did he? Did he go to Egypt or? I forget. Went to Saudi Arabia. Saudi Arabia. So he didn't, he decided not to go there. What would his rights have been had he remained here? If he decided not to leave the country? Because that's what he was trying to do. Right. He was trying to preserve the same, the status quo that he would have had if he hadn't left the country. Right. And that's the purpose of this I-5 fault, to ensure that he didn't die. I understand. Okay. So his rights would be, when the I-45 is denied, the government has two choices. Leave it as is. It's denied, and he's free to wander around the United States. The other choice is to put him into 1229A, 8 U.S.C. proceedings or 240A or, I'm sorry. Removal. 240 of the Immigration Nationality Act for removal. That's where, in other words, the government cannot remove him. Only an immigration judge can order his removal. That's because he's here. That's because he's here. Right. But getting the I-512 document is preserving that right to come back and have that removal proceeding. But isn't that pending the adjustment petition? Well, the adjustment is a the adjustment of status applications. It's an application for admission. That is denied. That's not a final agency decision by the service. It moves on to immigration judge.  And he's going to decide to remove him. But if he's here, he can challenge it. But if he's not, he's got If he's not here, but he comes back with the I-512 document, then he would be he would present that to the officer and he would be What the but I'm sorry. I just didn't understand what it says. But is that is it here? Do we have it in the record? Yeah. The I-512. I've never seen a copy of the of what was issued to him. And I asked the government for a copy of that, and I never received it. And it's never been submitted on the record. But it does warn. Well, is it just a standard form? It's just a form with his picture on it. And it says this alien has been authorized to be to return to the United States to resume his application for adjustment of status. For adjustment of status. But my worry is if the form says that he can return to resume his adjustment of status, and the adjustment of status is already gone, then what right does he have by just having this piece of paper? Because the form says he can only, as I understand it, only resume or fight for his adjustment of status. On the form it says to resume your application for adjustment of status before the service or during removal proceedings, which is what he preserved his right But we were in this. But if we're only going for removal, I mean, if they remove, he's not here anymore. Anyway, so it's moved. And then I'm left with where I am with the rest of this. Well, if he's in removal proceedings, an immigration judge can re-decide that case or make his own decision on the case and grant him adjustment of status. So he could have you're saying that if they hadn't revoked, he could have come back. Then they could have put him in removal. Yes. Under APUSB But it was still pending when he was, what do you say, absconded? When he was out, even though they denied the application, it was denied at the service level, but it's still pending in the sense that it's not a final decision until either the I.J. or the BIA rules on it. So on his return, he was relying on that advanced parole to come back to the United States to resume his application during removal proceedings or But he doesn't get any. If he's not here, that's the hang-up. Well, if he's not here If he comes back with the I-512, the officer would place him in proceedings immediately under 8 U.S.C. 1225b-2. Once he gets in. Yeah, or right at the border. He'd be before at I.J. Yeah. And he could raise the Exactly. He could challenge the earlier determination of the adjustment of status. And that's under 8 U.S.C. 1225b-2, which requires that he shall be placed into 1229a proceedings. So he has to be here to challenge his adjustment of status. And the whole issue here is whether by revoking this permission for him to be here, he is somehow precluded from challenging it because he's not in the country. But on the other hand, it's hard to see how he could challenge the cancellation of the form he was given if, you know, if he's not here. I mean, you know, he Well, the government did not allow him to come back. Right. And there's nothing in the regulations that I see where he could, where the government can revoke that document. I mean, that document just replaces the document he would need to be able to be, to come back to the United States. Right. It's It doesn't guarantee anything for him in terms of, you know, you're going to be ultimately granted a green card or anything like that. It just says you preserved your right to come back. So your position would be that the normal preclusion against allowing a person to proceed with his adjustment of status unless he's here has to have an exception for when they let him go out of the country with a promise that he'd get back in, and then they revoke the promise. Right. Okay. If you look at Title VIII Code of Federal Regulations 1245.2a1ii, it describes that situation in my brief where an alien, you know, the steps that have to be in place for him to be able to preserve his right to come back, and it doesn't talk about him coming back and actually being physically entered into the United States. It talks about upon the arriving aliens return to the United States pursuant to a grant of advanced parole that he be placed in removal proceedings. So they could have paroled him in and then revoked that parole and placed him in proceedings, or when he came to the border, knocking at the door, they could have grabbed him and immediately put him into proceedings. But the point is, he came back with a document that was given to him on the promise that when he came back, he would be able to pursue. What in the record shows that he had the do you, do we look at to say this is what he, what he was relying on in order to be able to come back and challenge any denial of an adjustment of status application? What, what, it, it, it, I mean, is there a regulation that says what this advanced parole gives him? Either a document that says it or a reg. I look for a reg, but I can't find it. In fact, that seems, I mean, you getting up and saying right off the bat, I understand the argument on the other gives you some credence in my line. I love that as a district judge. Gives me some credence. So I'm, I'm really saying to you, what regulation do I have to look at that that's what I asked my law clerks to find. That's what I tried to find. If I have nothing, then the fact that he can only come back and request adjustment or his adjustment of his status, the fact that he's out, got rid of his chance to adjust the status. So the fact that he's out, does it also get rid of this temporary document he got, which is what they argue. And I look for everything to see if this is a non-discretionary act, whether I can, or against their own procedure, why I should send it back to district court. Um, I think the answer to that is a Title 8 Code of Federal Regulations 1.1Q. 1.1Q? Q. And what that says is it describes an arriving alien. Okay. And in describing the arriving alien, it references 8 CFR 235B1AI regarding those numbers again. I'm sorry. B1AI. Title 8 Code of Federal Regulations 235B1AI. Right. Now that relates to the inspection of aliens. Um, aliens under that section, uh, it says, if an immigration officer determines that an alien who is an arriving, who is arriving in the United States or is described in Clause 3 is inadmissible under Section 212A6C or 212A7, the officer shall order the alien removed. Now the order, that's the section of law the officer followed. And the officer said because his I-512 was revoked, he had no valid entry document. So he removed him under that. It's a summary removal. Right. What he should have done was gone to 235B1, or I'm sorry, B2, where that I-512 resolves the problem in 235B1 because that is his valid entry document, valid travel document, or document to present that would allow him back in. He got that because he said to the immigration service, I don't have any valid entry documents. I'd like to travel and come back. Will you give me that? They gave it to him saying, present this and we'll let you in and finish your. As of that time, that was true. Right. Then when he left, they revoked that. Yeah. And I don't see any authority to revoke that document once it's issued. And it's unfair. I mean, it just basically they removed him. Now, the problem is that – okay. I think we should hear from the government. You have some time. Thank you. Good morning. May it please the Court. Tom Dupree for the United States. What I think this case boils down to is that in departing the U.S. during the pendency of his adjustment application, the plaintiff knowingly took a risk. I say knowingly because – He took the risk that the government might renege on its promise that was made. And then he acted in good faith and reliance upon a document that he received, apparently. And you're saying that he takes the risk that the government is going to act in a deceptive way. Well, I disagree with that. That's part of the risk. I disagree with that characterization, Judge Walker. I think that the Petitioner-Plaintiff's counsel, in fact, had it exactly right. And this is reflected on pages 33 to 34 of our supplemental excerpts where we have the plaintiff's amended complaint, where he says that before he left the United States, his lawyer said to him, don't do this, because while you're gone, the government may deny your application, you'll be subjected to expedited removal, and you'll be whisked out without review by an immigration judge. That risk is clearly present. He was trying to mitigate against that risk, though, by getting this I-512 form. Why don't you tell us what is that? That's the essence of what this case is concerned with. That's his argument. The I-512 is – I agree with counsel. I don't think it's in the record in this case. I have tried valiantly to track it down. I have not been successful. So what I did was I Googled the form just to see what the form itself looks like so I could educate myself. And the form is fairly standard. The one – Would you share – could you share that with us, what the form looks like? That's what I'm saying. It's a form that is fairly – Actually, physically show us the form. I looked at it online. I can tell you how I found it. If you just go onto Google, you type I-512, it links you ultimately to the Department of Homeland Security website. I found it. It's not in his record, but it's Google. There you go. There you go. The second best thing to a records site is a Google site. But in any event, it's a fairly bare-bones form. It simply says that essentially the bearer – admit the bearer of this document to the United States. It does not have language suggesting that it's irrevocable or that it confers some sort of permanent right, as the plaintiff would have it, to reenter the country. I think it's – It says the bearer – what does it say? It essentially says admit the person holding this form. It gives his name, of course, and it says parole this person. What's the picture? I don't know. Again, it's a form? The infill. Right, right. If the officer, when he was leaving the country, had just written him a note and says, here's a note, you know, to whom it may concern, please admit him in the future when he wants to come back. It's about – it's about like that. More or less, yes. It's a little more specific than that. But, yes, it's a one-page form. Excuse me. But, however, in determining whether to give advance parole, that's a discretionary decision, one might say. But there's a standard upon which to look at that, which would make it a non-discretionary decision. I mean, what I'm suggesting to you is, as to the revocation of advance parole, we're looking at whether that can be just something you can just do for no reason whatsoever. Are you suggesting that that's an absolute discretionary decision that we cannot look at? I think it is, Judge Smith, and certainly the Seventh Circuit in Samira. Well, I realize what the Seventh Circuit said, but look at the regulation. Are you saying there's no standard upon which to grant? Well, the advance parole regulation is simply a short sentence that says the service can grant advance parole. Is Your Honor referring to the section on parole generally? Right. Right. And it's not clear to what extent that applies in the context of what occurred here. In other words, not the initial decision to parole someone in, but a decision to terminate parole. So I would submit that it is a discretionary determination. Well, but I thought that it was sort of flowed automatically when he no longer had. But the argument was, we get into these jurisdictional conundrums, I suppose, with language. But the guts of it is that he's got no right to get back in when, after he's got no  And I think that's a legal adjustment of status, I think, isn't it? I think that's right, Judge Schroeder, and I think really what it boils down to and that's a legal, I guess that legally flows from whether or not he has jurisdiction to review the adjustments. The adjustment, which I think, as plaintiff's counsel conceded, there's no jurisdiction. And just following up on the point that was implicit in one of Judge Walker's questions is, I don't think that this case has any elements of deceptive conduct or bad faith on the government about us giving a promise and then revoking it. I think it's fairly standard knowledge, certainly within the immigration bar, that when you are in the United States, you have certain rights applicable to you that don't apply if you're outside the United States. Namely, the right to go before an immigration judge. As we all know, there's a dichotomy in the law, a split in the law, between aliens who are physically present and aliens who are not. And by voluntarily changing his classification, that is to say, from an alien who is physically present in the United States to one who is not, the plaintiff was knowingly taking a risk that the adjustment application could be denied in his absence. Roberts. I take your point that you just made, but about the I-512 revocation, were there regs, this is a point, I guess, that Judge Smith just made a minute ago, were there any regs, any standards available or out there for the revocation of the I-512 that you know of? Not that I know of. Again, I recognize that there are standards applicable to parole decisions, which I think is slightly different from what happened here, that is to say, a revocation of parole. So I think to answer your question. What you're really arguing, then, that the fact that there's a standard on a case-by-case basis for urgent humanitarian reasons or significant public benefit on the parole that the Attorney General can, having granted this advanced parole, I suspect, on similar situation, can just without problem revoke. Yes. I think that's the case. We have no regulation about that. That's right. I think that's right. And I don't, again, I don't see necessarily the other side of the coin is saying it's not in any different jurisdictional basis than the adjustment of status? I'm sorry. It's not in any ---- It has no jurisdictional difference than the adjustment of status. Absolutely. To the extent that it's insulated from review because it's discretionary. Yes. Either it's discretionary and that they can revoke it, or it's not. To the extent it's not discretionary, it's because it's a link to the adjustment of status. Yes. Yes. I think that's the case. It's discretionary. Yes. It is discretionary. Let me just say a word about the mootness issue. As the Court knows, the district court offered two bases for its decision. One was lack of jurisdiction, and the other was mootness. Certainly there's a degree of overlap, but I do think that each of these bases provides an independently sufficient basis for this Court to affirm the judgment below. Well, it was pretty clear to me that absent the problem of the I-512, that because he was out of the country, he couldn't do much, do anything about the adjustment of status. Right. If he hadn't gotten the I-512 and he just left, that would have been the end of the ballgame as far as the adjustment of status was concerned. Yes. And the only question I had in my mind was whether by virtue of the revocation of the of the I-512, that doesn't seem to me if there was if there was any way to challenge that, that that should not be barred by virtue of the fact that he was out of the country, because that's how he got out of the country. But it may be a purely discretionary decision that's unreviewable anyway. I think that's right. I think it is a discretionary decision that's unreviewable. I think the other problem that the Plaintiff faces, of course, is that now there is an existing removal order issued in New York that renders him inadmissible. So I think what the district court in this case was grappling with was the notion that, look, even if I felt that you had been wrongly denied adjustment or even if I felt that parole had been improperly revoked, there's still the matter of this existing removal order that was entered by a New York court and that the district court in Arizona lacks jurisdiction to vacate, and that is an insurmountable bar to the Plaintiff adjusting. The Plaintiff, of course, could have challenged that removal order. Of course, he could have avoided incurring the removal order in the first place by not knowingly traveling back to the United States when he knew he lacked a valid entry document. It's because he's locking every door. Well, it is. However, you know, it just still seems a little bit hard to suggest that he has the document to come back. The removal order isn't in place then. He's not allowed in, even though the document gives him the chance to come back. And we're going to say that's discretionary because there's no regulation saying it isn't or no standard of review that would give the Ninth Circuit the reason. And now, because he wasn't here to fight it, because a removal order in New York has been entered, he's automatically through. Well, your argument doesn't depend on that, I take it. It doesn't depend on it. Well, it depends on that if we don't go to moot. But I think, Judge, to answer your concern, I think that the mere fact he's in physical possession of a letter that on its face says, admit this bearer, you know, is the equivalent of somebody driving with a suspended driver's license and saying, look, I have this physical car. This gives me the right to do it. At the time that this is issued, it's not a permanent right. It does not permanently entitle the bearer to do it. It's a conditional grant that can be revoked at the discretion of the government. So the fact that he had this letter, again, accepting it under conditions, as his lawyer told him, could be revoked at any time, subjecting you to immediate expedited removal, I don't think carries the day for him. The letter went with the pending adjustment of status petition. I'm sorry, Judge, I don't know if the letter was part of the letter. It was part and parcel of the pending adjustment of status. Yes. No doubt the two are linked. If he had randomly come into a CIS office and said, I don't have any pending adjustment, but will you give me permission to come and go, I very much doubt they would have granted it. So, yes, the two are linked together. Unless there are further questions, I ask that the judgment blow be affirmed. Thank you. Thank you. Mr. Adany. I just have a couple of quick comments. As far as my advice to Dr. Hassan, I advised him that if he did leave the country, you know, they could deny the application. But when he came back, he would have his right to do it. I don't think your advice is in question here. I'm sorry? I don't think there's any issue with respect to what you said. Okay. Or any implied criticism. I don't think that makes it such that it's one way or the other in what I'm on. But go ahead. I think it's okay for you to tell us what you think. Yeah. It's just the environment right now, and just letting him know that these kind of things can happen, make things very difficult, versus just staying here and waiting for a decision, and if it's denied, have your hearing before an immigration judge if the service decides to place you into proceedings. Thank you. Thank you. The client has had good representation. Thank you. The Court appreciates the arguments of both sides, and the case just argued is submitted for decision.
judges: Schroeder, Smith, Walker